UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FRANK ALLEN LITTLE,

                        Petitioner,

v.                                         CASE NO. 03-CV-75083-DT
                                         HONORABLE GERALD E. ROSEN

HUGH WOLFENBARGER,

                        Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Frank Allen Little has filed a *pro se* application for the writ of habeas corpus

under 28 U.S.C. § 2254.  The habeas petition attacks Petitioner's state conviction on twelve

grounds.  Respondent urges the Court to deny the petition.  The Court agrees for reasons given

below that the habeas petition must be denied.

**I.  Background**

On December 17, 1998, a circuit court jury in Monroe County, Michigan found Petitioner

guilty of first-degree murder, MICH. COMP. LAWS § 750. 316.  The conviction arose from the fatal

stabbing of Marie (Mimi) Beal.  Petitioner did not testify at trial or present any witnesses. His

defense was that he was not guilty of first-degree murder because he was too intoxicated at the

time to form the necessary intent.  He argued through counsel that, at most, he was guilty of

manslaughter.

The trial court sentenced Petitioner to life imprisonment for the murder.  Petitioner raised

the following six claims in an appeal of right:  (1) there was insufficient evidence of

premeditation and deliberation; (2) the verdict was against the great weight of the evidence; (3)

the increase in the sentence after sentencing violated the prohibition against double jeopardy; (4) trial counsel was ineffective; (5) the jury instruction on inferring intent was reversible error; and (6) the trial judge erroneously denied his motions for a directed verdict of acquittal and for a new trial. These claims, with the exception of the one about Petitioner's sentence, form the basis for Petitioner's first five habeas claims. The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished *per curiam* opinion. *See People v. Little*, No. 217298 (Mich. Ct. App. Oct. 9, 2001). Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal. *See People v. Little*, No. 120350 (Mich. Sup. Ct. Apr. 29, 2002).

Petitioner raised his other seven habeas claims in a motion for relief from judgment, which the trial court denied after concluding that Petitioner could have raised his claims on direct appeal. Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal, citing Michigan Court Rule 6.508(D). *See People v. Little*, No. 242261 (Mich. Ct. App. Feb. 14, 2003). The Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Little*, No. 123399 (Mich. Sup. Ct. July 28, 2003).

Petitioner's habeas petition is dated December 10, 2003. His grounds for relief read:

I.    Petitioner's conviction for first-degree murder is a violation of Petitioner's due process rights provided by the Fourteenth Amendment to the United States Constitution where there was insufficient evidence at trial to prove that there was premeditation and deliberation.

II.   The jury verdict was against the great weight of the evidence, therefore Petitioner's conviction for first-degree murder is a violation of Petitioner's due process rights provided by the Fourteenth Amendment to the United States Constitution.

III.  Petitioner was deprived of his Sixth and Fourteenth Amendment rights under the United States Constitution to have effective assistance of counsel for his defense.

2

IV.    Petitioner was deprived of his Fourteenth Amendment right to a fair trial and due process of law by the trial judge's erroneous instructions to the jury.

V.    Petitioner was denied his constitutional rights to a fair trial and due process of law where the trial judge abused his discretion by denying a directed verdict of acquittal as to first-degree murder and by denying Petitioner a new trial.

VI.    Petitioner was deprived of his Sixth and Fourteenth Amendment rights under the United States Constitution to have the effective assistance of counsel for his one and only appeal as of right.

VII.    Petitioner was deprived of his Sixth and Fourteenth Amendment rights under the United States Constitution to have the effective assistance of counsel for his defense.

        A.    Petitioner's trial attorney failed to object to Petitioner being handcuffed in the presence of the jury.

        B.    Petitioner's trial attorney failed to move for a mistrial after two inadmissable portions of Petitioner's taped interview by police were played in the presence of the jury.

        C.    Petitioner's trial counsel failed to have evidence favorable to Petitioner presented at trial.

        D.    Petitioner's trial counsel failed to have a bias[ed] juror dismissed for cause or by peremptory challenge.

        E.    Petitioner's trial counsel failed to object to the courts mishandling of juror misconduct.

        F.    Petitioner's trial counsel failed to object to hearsay testimony at trial.

VIII.    The prosecutor's persuasive and repeated misconduct deprived Petitioner of his state and federal constitutional right to a fair trial and due process of law.

3

      A.     The prosecutor failed to produce evidence in support of his opening statement.

      B.     The prosecutor vouched for the credibility of his star witness.

      C.     The prosecutor had inadmissible evidence presented to the jury by means of trickery.

IX.     Petitioner's constitutional rights to a fair trial and due process of law were violated when the judge committed reversible error by his instructions regarding possible verdicts.

X.     Petitioner was deprived of his United States Constitutional rights to a fair trial and due process of law by the cumulative effect of trial court errors.

XI.     Petitioner is actually innocent of the crime for which he was convicted and failure to review the foregoing claims will result in a fundamental miscarriage of justice.

XII.     Petitioner has demonstrated good cause for not raising habeas claims VI through XII on direct appeal and actual prejudice as a result of multiple violations of his constitutional rights to a fair trial and due process of law.

Respondent argues through counsel that Petitioner's claims are procedurally defaulted, are not cognizable on habeas review, and are without merit.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original).

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, review is conducted in light of the law as it existed at the time of the final state court decision, *Teague v. Lane,* 489 U.S. 288 (1989), unless an intervening constitutional decision announces a 'watershed' rule of criminal law with implications for the fundamental fairness of the trial proceeding. *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1670 (2005).

## III.  Habeas Claims Raised on Direct Review

### A.  Sufficiency and Weight of the Evidence; Denial of the Motions for a Directed Verdict of Acquittal and New Trial

The first habeas claim alleges that there was insufficient evidence produced at trial to support Petitioner's conviction for first-degree murder. The fifth habeas claim alleges that the trial judge abused its discretion by denying Petitioner's motions for a directed verdict of acquittal and a new trial.[1] The basis for these claims is that Petitioner was too intoxicated to have premeditated and deliberated the murder.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). After *Winship*, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S. [276, 282 (1966)] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (footnote omitted) (emphasis in original). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id*. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir.), *cert. denied*, 537 U.S. 1004 (2002), *and cert. denied*, 539 U.S. 938 (2003).

---

[1] Petitioner has withdrawn his second habeas claim, which alleges that the verdict was against the great weight of the evidence. After Respondent filed his answer to the habeas petition, Petitioner recognized that a federal court lacks jurisdiction to grant habeas corpus relief on the ground that the state conviction is against the weight of the evidence. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

### 1.  Premeditated Murder in Michigan

In Michigan, jurors "can convict [a defendant] of murder only when they are convinced beyond a reasonable doubt that (1) the defendant intended (actually or impliedly) to kill and (2) circumstances of justification, excuse or mitigation do not exist." *People v. Morrin*, 31 Mich. App. 301, 323; 187 N.W.2d 434, 445 (1971).  Voluntary intoxication is a defense to first-degree murder and can reduce the offense to second-degree murder.  *People v. Garcia*, 398 Mich. 250, 259; 247 N.W.2d 547, 550 (1976).

First-degree murder requires a finding that the defendant committed a homicide with premeditation and deliberation.  *Morrin,* 31 Mich. App. at 328; 187 N.W.2d at 448-49.  "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Id*., 31 Mich. App. at 329; 187 N.W.2d at 449 (footnote omitted).  "While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *Id*., 31 Mich. App. at 330; 187 N.W.2d at 449.

> A pause between the initial homicidal intent and the ultimate act may, in the appropriate circumstances, be sufficient for premeditation and deliberation. *See People v. Tilley*, 405 Mich. 38, 45; 273 N.W.2d 471 (1979).  However, the Legislature's use of the words "willful," "deliberate," and "premeditated" in the first-degree murder statute indicates its intent to require as an element of that offense substantially more reflection on and comprehension of the nature of the act than the mere amount of thought necessary to form the intent to kill.  As the Supreme Court has stated, "when a homicide occurs during a sudden affray . . . it would be 'a perversion of terms to apply the term deliberate to any act which is done on a sudden impulse.'" *Tilley, supra* at 44-45; 273 N.W.2d 471, quoting *Nye v. People*, 35 Mich. 16, 18 (1876).  To speak of premeditation and deliberation being instantaneous, or taking no appreciable time, destroys the statutory distinction between first- and second-degree murder.  *See Morrin*, *supra* at 329; 187 N.W.2d 434; LaFave & Scott, Criminal Law (2d ed.), § 7.7, p. 643.

7

*People v. Plummer*, 229 Mich. App. 293, 301; 581 N.W.2d 753, 757 (1998).

### 2. The Facts

Kimberlee Mc Kay Rockwell testified that, about 10:30 p.m. or 11:00 p.m. on August 26, 1997, Petitioner arranged to rent a room from Mimi Beal for $80 a week. Mimi was eager to rent a room in her trailer because her husband had left her and she was worried about being able to pay her expenses. After Mimi collected rent money from Petitioner, the two of them and Kimberlee went out for drinks. Kimberlee and Mimi dropped off Petitioner at the Southern Nights Tavern and then went to another bar. They found Petitioner at George's Bar later in the evening. Kimberlee went home about 12:30 or 1:00 a.m. after promising to call Petitioner and Mimi later that night to determine if they needed a ride home. Both Petitioner and Mimi were affected by alcohol at the time, but they were not drunk.

Taxi driver Billy Manley testified that he picked up a man and a woman from George's Bar and drove them to a trailer park about 1:30 a.m. or 1:45 a.m. on August 27, 1997. The woman was helping the man, who could not walk or talk very well. The man was renting a room from the woman, and he wanted to sleep in the woman's room, but the woman told the man that he would sleep in his room and that she would get him up for work. Mr. Manley was unable to say whether Petitioner was the man that he transported to the trailer park.

Dennis Greenwood, who was Mimi Beal's next door neighbor, testified that, about 4:30 a.m. on August 27, 1997, he heard loud voices, and he saw two silhouettes in the doorway of Mimi's trailer. He could see Mimi's back and a man standing in the doorway. Mimi stepped away from the door, and Greenwood walked back down his hallway. He then heard Mimi say, "Get away from me, get out of here." A male voice responded, "I'll kill you," three times.

8

Greenwood got in bed and laid down.  He subsequently heard someone pounding on his door.  Mimi was there, holding her hands over her mouth.  Blood was running down her hands, and she said, "Please help me."

Mr. Greenwood did not know how much time elapsed between the time he heard the exchange of voices next door to the time he heard Mimi pounding on his trailer, but he thought that everything occurred within a few minutes.  He testified that, at most, five to ten minutes passed from the time he first got out of bed until the second time he got out of bed and found Mimi at his door.

Richard Garcia lived across the street from Mimi Beal and Dennis Greenwood.  He also heard Mimi and a man arguing early on the morning of August 27, 1997.  In addition, he heard large objects banging against the wall.  He thought that it was Mimi and her husband arguing again, but he did not see anything when he looked out the window.  Then he heard a loud scream.  When he looked out the window again, he saw Mimi come out the door of her trailer holding her neck.  She went to Dennis Greenwood's trailer and said, "He stabbed me."  Mr. Garcia thought that five or ten minutes elapsed from the time he first heard a voice until Mimi said, "He stabbed me."

About 5:45 a.m. or 6:15 a.m. that same morning, Kimberlee McKay Rockwell was awakened by a telephone call from Petitioner.  Petitioner stated that he thought he had done something wrong, that he was covered with blood, and that he thought he had stabbed somebody.  When Kimberlee asked him whom he thought he had stabbed, Petitioner said, "Mimi."  Kimberlee then went to Mimi's place and found Mimi lying in her neighbor's yard covered in blood.  Kimberlee returned home and answered another call from Petitioner, who asked whether

9

Mimi was dead or alive.  Kimberlee informed Petitioner that Mimi was dead, that the police were looking for him, and that he should turn himself in.  Petitioner thanked her and hung up.

On August 28, 1997, Officer Michael Palicki was dispatched to the Arby's in Toledo, Ohio because a man had called the police to say he wanted to turn himself in, possibly for murder.  The man was Frank Little, who asked several times during the drive to jail, "Did she die?"  The man also asked Officer Palicki to shoot him.

Petitioner subsequently informed Deputy Sheriff Donald Vander Cook that he was involved in the incident with Mimi Beal, that he wanted to plead guilty to murder, but that he was drunk and did not remember the particulars of the incident.  Petitioner said that the only thing he could really remember was waking up in a ditch and bleeding badly.

The medical examiner testified that the victim sustained a total of nine sharp force injuries or incised wounds.  The cause of death was a knife stab to the jugular vein and carotid artery of the victim's neck.  The medical examiner opined that the victim survived two to three minutes following this injury.  The other stabbing injuries did not cause her death, but they would have contributed to her death if left unattended.

A rational trier of fact could have determined from the evidence as summarized above that Petitioner killed Mimi Beal.  He concedes for purposes of his sufficiency-of-the-evidence argument that there was sufficient evidence that he was the assailant.  *See* Memorandum of Law in Support of Habeas Corpus Petition, at 22-23.  He admitted to the police that he was involved in the crime, and his repeated comment, "I'll kill you," was evidence of an intent to kill.  More than one witness testified that the victim's husband, who Petitioner claims could have committed the crime, had left for Florida before the crime.

10

### 3. The State Court Decision

The more difficult question is whether Petitioner premeditated and deliberated the murder.  The Michigan Court of Appeals described the issue as "a close question."  The court of appeals then analyzed the evidence in light of all the facts and circumstances, including the parties' prior relationship, Petitioner's actions before and after the crime, and the killing itself. The state court's analysis reads:

> Although there was no evidence of a long-term relationship between defendant and the victim, they were not complete strangers at the time of the stabbing. Evidence at trial showed that on the day before the murder, they entered into an agreement for defendant to rent a room in the victim's trailer for a week.  Further, defendant and the victim spent that evening and the beginning of the next day together at a bar, and there was testimony indicating that defendant made sexual advances toward the victim.
>
> Moreover, while testimony at trial showed that a heated argument preceded the killing, the evidence does not necessarily indicate that the argument was the sort of "affray whose nature would not permit cool and orderly reflection."  *People v. Morrin*, 31 Mich. App 301, 331; 187 N.W.2d 434 (1971); see also *People v. Tilley*, 405 Mich. 38, 44-45; 273 N.W.2d 471 (1979).  There was no evidence in the victim's trailer that any physical altercation preceded the stabbing.  Dennis Greenwood testified that he heard a loud argument coming from the victim's trailer.  When he looked out the window, he saw the victim and a man standing in her doorway. As he walked away from the window, he heard the victim say to the man, "get away from me, get out of here."  The man responded, "I'll kill you, I'll kill you, I'll kill you."  There was evidence that approximately five to ten minutes passed between the time the argument started and the time that the gravely wounded victim arrived at Greenwood's trailer, which was immediately next door to hers.  A rational trier of fact could conclude from this evidence that defendant had sufficient time during the argument or between his threat and his attack, "to subject the nature of his response to a second look." *Plummer, supra*.
>
> Furthermore, although there was evidence of defendant's intoxication earlier in the evening, it did not necessarily establish that he did not have the capacity for conscious reflection at the time of the stabbing.  *Cf. id*. at 303. Testimony indicated that when the taxi driver picked up defendant and the victim from the bar at approximately 1:30 a.m., defendant was very intoxicated. However, the record shows that the stabbing occurred between 4:30 a.m. and 5:00

a.m., and, except for defendant's statement to the police that he did not remember any of the events after he returned to the victim's trailer because he was drunk, there was no evidence that defendant was still highly intoxicated at the time of the stabbing. Further, approximately an hour after the attack, defendant had the presence of mind to call a friend from a pay telephone to ask about the condition of the victim. The jury was instructed on the defense of voluntary intoxication and, apparently, rejected the proposition that defendant's judgment was so impaired that he could not form the intent to commit first-degree premeditated murder.

On the other hand, there was no evidence that defendant was involved in conduct designed to cover up his actions afterwards, so as to support a finding of premeditation. *See, e.g., Haywood,* [209 Mich. App. 217, 230; 530 N.W.2d 497 (1995)] (defendant's attempt to clean up blood after the killing suggests deliberation and premeditation). The prosecution argues that defendant's choice to flee the scene rather than garner aid for the victim suggests that "the homicide was the product of planning and calculation rather than 'hot blood.'" However, although such conduct may be indicative of defendant's post-homicide state of mind, it suggests little or nothing about his thoughts before or during the murder. *People v. Hoffmeister*, 394 Mich. 155, 161, n 7; 229 N.W.2d 305 (1975). Moreover, leaving the scene of the crime is no more consistent with a premeditated attack than with a spontaneous attack prompted by "hot blood." Accordingly, we do not find that defendant's conduct demonstrates a lack of remorse that would support a finding of premeditation. Cf. *People v. Paquette*, 214 Mich. App 336, 342- 343; 543 N.W.2d 342 (1995). Similarly, although the victim was stabbed numerous times, the brutality of the killing does not itself justify an inference of premeditation and deliberation. *Hoffmeister*, *supra* at 159.

Thus, the evidence of premeditation was certainly not overwhelming. Nonetheless, we must consider the evidence in a light most favorable to the prosecution. Doing so, we cannot conclude that there was no rational basis for the jury's conclusion that the killing was premeditated.

*Little*, Mich. Ct. App. No. 217298, at 2-3. The court of appeals concluded that the evidence was sufficient to prove the elements of premeditated murder beyond a reasonable doubt.

### 4. Analysis

The Court is not required to ask itself whether it believes the evidence at trial established guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

12

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.

A rational juror could have concluded that Petitioner possessed sufficient time during the argument with Mimi Beal to premeditate the murder. The medical examiner testified that Mimi Beal probably lived no more than two or three minutes after she was stabbed in the neck. Additional testimony established that, following the stabbing, Mimi walked from her trailer to her neighbor's trailer, roused her neighbor from bed, and talked to him. The jury could have concluded that the fatal wound to the neck was the last inflicted stab wound and that Petitioner had sufficient time during the preceding argument to subject his actions to a second look. As previously stated, "[a] pause between the initial homicidal intent and the ultimate act may, in the appropriate circumstances, be sufficient for premeditation and deliberation." *Plummer*, 229 Mich. App. at 301; 581 N.W.2d at 757. "[P]remeditation does not require extensive planning . . . ." *United States v. Garcia-Meza*, 403 F.3d 364, 373 (6th Cir. 2005).

Although there was evidence that Petitioner was intoxicated on the night of the crime, Kimberlee McKay Rockwell testified that Petitioner normally became incoherent and passed out when he was drunk. The taxi driver saw Petitioner get out of the cab without assistance when they reached the trailer park, and Mr. Greenwood heard a man say, "I'll kill you." There was other evidence that, after the stabbing, Petitioner left the trailer park, walked to a gas station, and telephoned Kimberlee McKay Rockwell. The evidence, when taken as a whole and in the light most favorable to the prosecution, suggests that Petitioner was not so intoxicated as to be incapable of premeditating and deliberating a murder.

To conclude, the state court's determination of the facts and its thorough analysis were

13

not  unreasonable.  The state court's ultimate conclusion that the elements of premeditated murder were established may have been wrong, but "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. at 411.  The state court did not unreasonably apply *Jackson*.[2]  Accordingly, Petitioner has no right to relief on the basis of his first and fifth claims.

## B.  Trial Counsel

The third habeas claim alleges that Petitioner was deprived of his Sixth and Fourteenth Amendment rights under the United States Constitution to effective assistance of counsel for his defense.  Petitioner contends that his trial attorney failed to (1) conduct a pretrial investigation or to interview any witnesses, (2) make a proper motion for a directed verdict on the charge of first-degree murder, (3) move to suppress Petitioner's statements to the police, (4) move to suppress photographs of the autopsy, (5) object to highly prejudicial hearsay, and (6) impeach a prosecution witness with prior inconsistent statements.

To prevail on an ineffectiveness claim, Petitioner must show that the state court's adjudication of his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  *Caver v. Straub*, 349 F.3d 340, 347-48 (6th Cir. 2003). *Strickland* sets forth a two-pronged test for claims alleging ineffective assistance of counsel. The petitioner must show that defense counsel's performance was deficient and that the deficient

---

[2]  The state court did not cite *Jackson* in its decision, but it used the same standard, as set forth in *People v. Johnson*, 460 Mich. 720, 722-23; 597 N.W.2d 73, 75 (1999).

14

performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  An attorney's performance is deficient if "counsel's representations fell below an objective standard of reasonableness."  *Id*. at 688.  To satisfy the prejudice prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Id*. at 687.

### 1. Pretrial Investigation

Petitioner alleges that his attorney failed to conduct a pretrial investigation, interview witnesses, or present any evidence in defense of Petitioner.  Petitioner contends that there were witnesses who could have testified that Mimi Beal's husband, David Beal, had threatened her and that David Beal was present in Michigan, not Florida, at the time of the crime.  Petitioner further contends that a representative from the bus company could have impeached David Beal's testimony by showing that it was impossible to reach Florida by bus as quickly as David claimed he did.  Petitioner alleges that James Little could have testified that Petitioner had a serious cut on his hand *before* the murder, and Police Officer Vamos could have testified that a witness thought the victim was arguing with her husband before the stabbing.  Petitioner contends that expert witnesses could have been called to testify about Petitioner's intoxication and the lack of the victim's blood on Petitioner.

Petitioner raised these issues in his motion for new trial, but the trial court determined that the claims did not warrant a new trial or a directed verdict of acquittal.  The Michigan Court of Appeals also found no merit in the claims.  It concluded that the failure to call witnesses did

15

not deprive Petitioner of a substantial defense.

The Supreme Court stated in *Strickland* that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id*. at 690. Ineffective assistance occurs when an attorney fails to conduct a reasonable investigation and that failure results in prejudice to the defendant. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). A failure to investigate key evidence may not be excused if the omission was the result of negligence, not strategy. *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

Petitioner's attorney contemplated calling a witness, but he postponed making the decision until after the prosecutor presented its case. (Tr. Dec. 16, 1998, at 367-69.) He apparently decided for strategic reasons at a later time not to call the witness.

The specific evidence that Petitioner claims should have been brought out would not have made a difference in the outcome of the trial. The jury was made aware that the victim and her husband had argued with each other in the past. Two of the victim's neighbors, in fact, testified that they initially assumed the affray was between the victim and her husband. (Tr. Dec. 14, 1998, at 102, 110 (Dennis Greenwood's testimony); Tr. Dec. 15, 1998, at 202 (Richard Garcia's testimony).)

Evidence about the amount of time it took to travel to Florida would have been inconsequential in light of testimony that David Beal left the area a few days before the murder.

16

(Tr. Dec. 14, 1998, at 138 (David Beal's testimony); Tr. Dec. 15, 1998, at 206, 208 (Richard Garcia's testimony); Tr. Dec. 16, 1998, at 380, 395 (Kimberlee McKay Rockwell's testimony).) And the fact that Petitioner might have cut his finger before the murder would not have eliminated the possibility that he subsequently stabbed the victim. The Court agrees with the state appellate court that the failure to call witnesses did not deprive Petitioner of a substantial defense.

### 2. The Motion for a Directed Verdict

Petitioner alleges next that his attorney failed to make a proper motion for a directed verdict on the charge of first-degree murder. Petitioner contends that defense counsel made no meaningful argument in support of the motion.

Defense counsel did ask the trial court not to instruct the jury on first-degree murder because Petitioner's intoxication rendered him incapable of premeditating the murder. The trial court, however, stated that a rational trier of fact could find Petitioner became more sober and was able to deliberate and premeditate his conduct. (Tr. Dec. 16, 1998, at 433-36.) Petitioner has not shown that a more detailed oral argument would have produced a contrary decision. Therefore, he was not prejudiced by his attorney's brief oral motion.

### 3. Petitioner's statements to the Police

Petitioner argues that his attorney should have moved to suppress Petitioner's statements to the police on the ground that the statements were involuntary. Petitioner alleges that his statement was taken in the absence of an attorney and while he was drunk. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that, even if Petitioner was intoxicated, that fact alone was not dispositive of the issue of voluntariness.

17

The Supreme Court has held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary." *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989).

The record fails to demonstrate any coercion on the part of the police when questioning Petitioner. Deputy Sheriff Donald Vander Cook testified that he advised Petitioner of his constitutional rights while Petitioner was in custody. Petitioner claimed to understand his rights, and he agreed to waive them. During the questioning, however, Petitioner said that he would not talk to the officers unless they ripped up his waiver-of-rights form. After the officers tore up the form, Petitioner maintained that he knew his rights and was willing to talk. He subsequently asked for permission to smoke and to turn off the tape recorder. One officer left the room to make arrangements for Petitioner to smoke. Petitioner then motioned for Deputy Vander Cook to walk to the other side of the room away from the tape recorder. Once away from the tape recorder, Petitioner said, "If I get my cigarette, I'll tell you guys what you want to know, that I'm involved here." Petitioner proceeded to inform Deputy Vander Cook that he knew he did it, he wanted to plead guilty to murder, but that he did not remember the particulars of how the crime occurred due to his drunkenness. (Tr. Dec. 15, 1998, at 234-38.) Because there is no evidence of police coercion, defense counsel's failure to move to suppress Petitioner's statements to the police did not prejudice the defense.

18

### 4.  Autopsy Photographs and Hearsay

Petitioner's fourth claim about his trial attorney is that the attorney should have moved to suppress the autopsy photographs, which were gruesome and had no probative value because it was undisputed that the victim was stabbed nine times and died from her wounds.  Petitioner's fifth claim about trial counsel is that the attorney should have objected to Patricia Dupuie's testimony that, when Kimberlee McKay Rockwell informed her of Mimi Beal's death, Kimberlee said she thought that Petitioner hurt Mimi.

The trial court did not find the autopsy photographs to be overly prejudicial or gruesome, and the Michigan Court of Appeals determined that the photographs were admissible to illustrate medical testimony regarding the nature, extent, and location of the victim's wounds.  The Michigan Court of Appeals stated that Patricia Dupuie's hearsay statement was admissible under the exception for excited utterances.  *See* Mich. R. Evid. 803(2).

Because the photographs and hearsay were admissible under state law, defense counsel's failure to object to their admission was not indicative of deficient performance.  An attorney cannot be ineffective for failing to raise an issue that lacks merit.  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

### 5.  A Witness's Prior Inconsistent Statements

Richard Garcia informed the police before trial that he heard what could have been four gunshots on the morning of the murder.  At trial, Mr. Garcia testified that he heard yelling and banging noises coming from the victim's trailer, but he did not mention any gunshots.  Petitioner contends that his attorney should have impeached Mr. Garcia with his prior inconsistent statements because Garcia's trial testimony was damaging to Petitioner's defense that the sound

19

of gunshots could have been the victim's husband banging on the victim's door.

The Michigan Court of Appeals stated that any error was harmless because there was little probability that, but for the error, the result of the proceedings would have been different. This Court agrees. Given the strength of the evidence against Petitioner and the fact that witnesses claimed the victim's husband was out of town on the day of the murder, the inconsistencies in Mr. Garcia's testimony were inconsequential.

### 6. Conclusion on Petitioner's Ineffectiveness Claim

The Court concludes for all the reasons given above that defense counsel's performance was not deficient or did not prejudice the defense. Therefore, Petitioner has not demonstrated that his attorney was ineffective, and the state appellate court's decision was not contrary to, or an unreasonable application of, *Strickland*. Petitioner has no right to habeas relief on the basis of his third claim.

### C. The Jury Instructions on Inferring Intent

The fourth habeas claim alleges that the trial court's jury instructions on inferring intent deprived Petitioner of his Fourteenth Amendment right to a fair trial and due process of law. The trial court informed the jurors that they could (1) infer an intent to kill from the use of a dangerous weapon and (2) infer that Petitioner intended the usual results that follow from the use of a dangerous weapon. (Tr. Dec. 17, 1998, at 495.) Petitioner maintains that these instructions tended to shift the burden of proof to him.

### 1. Procedural Default

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" because Petitioner did not object at trial to the jury instructions on inferring intent. Generally,

> federal courts may not consider procedurally defaulted claims. *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000). A claim is procedurally defaulted if: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state courts actually enforced the procedural rule; and (3) the state courts' finding of noncompliance is an adequate and independent state ground for denying relief on the federal constitutional claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986).

*Cone v. Bell*, 359 F.3d 785, 789 (6th Cir. 2004), *reversed on other grounds*, __ U.S. __, 125 S. Ct. 847 (2005).

> A procedural rule is adequate only when it is firmly established and regularly followed at the time it was applied. *See Rogers v. Howes,* 144 F.3d 990, 992 (6th Cir. 1998). The rule would be an independent basis for disposition of a case if the state courts actually relied on the procedural bar. *See Harris v. Reed*, 489 U.S. 255, 261-62 (1989).

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001).

The procedural rule in question here requires defendants to preserve issues for appellate review by first objecting in the trial court. *People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999). "As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances." *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). Instructional errors, in particular, "should not be considered on appeal unless the issue has been preserved by an objection in the trial court." *People v. Handley,* 415 Mich. 356, 360; 329 N.W.2d 710, 712 (1982).

Petitioner violated this rule by failing to object to the disputed jury instructions at trial. (Tr. Dec. 16, 1998, at 424-33; Tr. Dec. 17, 1998, at 502.) The contemporaneous-objection rule was in effect at the time of Petitioner's trial in 1998, and it is enforced in Michigan. *Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir.), *cert. denied*, 540 U.S. 1004 (2003). The Michigan Court of Appeals specifically enforced the rule by citing *Carines* and stating that "appellate review is

precluded absent a showing of plain error affecting defendant's substantial rights." *Little*, Mich.

Ct. App. No. 217298, at 5. Plain-error review by a state appellate court constitutes enforcement

of the state's contemporaneous-objection rule. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir.

2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1939 (2005). Furthermore, the Michigan Supreme

Court did not set aside the procedural bar and decide Petitioner's claim on the merits. Thus, all

three elements of a procedural default have been satisfied: Petitioner violated a state procedural

rule, the last state court to enter a reasoned opinion on the issue enforced the rule, and the rule

was an adequate and independent state ground for denying relief. In order for this Court to

consider Petitioner's defaulted claim, he must establish (1) cause for his default and actual

prejudice as a result of the alleged violation of federal law or (2) that failure to consider the

claim will result in a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 2. Cause and Prejudice; Actual Innocence

Petitioner has cited several instances of allegedly ineffective assistance of counsel, but he

has not alleged that his attorney was ineffective for failing to object to the jury instructions on

inferring intent. Because Petitioner has not offered any argument in support of a finding of

"cause and prejudice," the Court deems the "cause and prejudice" argument abandoned. *See*

*Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003), *cert. denied*, 540 U.S. 1151 (2004).

Petitioner may overcome his procedural default, even in the absence of "cause and

prejudice," upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001)

(citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417

(1993)). This narrow exception to the general rule requires the habeas applicant to demonstrate

that the alleged constitutional error probably resulted in the conviction of one who is actually

22

innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, __124 S. Ct. 1847, 1849 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324. "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 327.

Petitioner's eleventh habeas claim alleges that he is actually innocent of the crime for which he was convicted. However, Petitioner has not submitted any new and credible evidence of actual innocence. Therefore, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate the merits of Petitioner's claim regarding the jury instructions on inferring intent.

## IV. Habeas Claims Raised During State Collateral Review

Petitioner's remaining claims were raised in a motion for relief from judgment and in appeals from the trial court's order denying the motion. Respondent argues that these claims are procedurally defaulted because Petitioner failed to raise the claims on direct review.

### A. Procedural Default

The doctrine of procedural default provides that,

[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal

23

habeas review of the claims is barred unless the prisoner can demonstrate cause
for the default and actual prejudice as a result of the alleged violation of federal
law, or demonstrate that failure to consider the claims will result in a fundamental
miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. at 750.

The procedural rule in question is Michigan Court Rule 6.508(D), which prohibits

granting relief from judgment if a motion

(1) seeks relief from a judgment of conviction and sentence that still is subject
to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

(2) alleges grounds for relief which were decided against the defendant in a
prior appeal or proceeding under this subchapter, unless the defendant establishes
that a retroactive change in the law has undermined the prior decision;

 (3) alleges grounds for relief, other than jurisdictional defects, which could
have been raised on appeal from the conviction and sentence or in a prior motion
under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal
or in the prior motion, and

(b) actual prejudice from the alleged irregularities that
support the claim for relief.

Mich. Ct. R. 6.508(D) (effective October 1, 1989).

Petitioner violated the essence of Rule 6.508(D)(3) by failing to raise the remainder of

his  claims, with the exception of his claims about appellate counsel, on direct appeal.[3]  All three

state courts relied on Rule 6.508(D) to deny relief.  The trial court did not cite the rule in its

order denying Petitioner's motion for relief from judgment, but the court stated that "[t]he

---

[3]   Claim VI alleges ineffective assistance of appellate counsel, and claim XII alleges that
appellate counsel was "cause" for Petitioner's default.  These claims are not procedurally
defaulted because state collateral review was the first opportunity to raise claims about appellate
counsel.  *Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004).

24

matters now presented should have been raised through the appeal process." *People v. Little*, No. 97-28583-FC (Monroe County Cir. Ct. June 7, 2002). The Court presumes that the trial court relied on 6.508(D)(3) to deny relief, because Petitioner's failure to raise his claims on appeal was the only basis for the trial court's decision and because the other subsections of Rule 6.508(D) were not applicable.

Both the Michigan Court of Appeals and the Michigan Supreme Court also relied on Rule 6.508(D). Their orders state that Petitioner was not entitled to relief because he failed to meet the burden of establishing entitlement to relief under Rule 6.508(D). These brief orders provided sufficient explanations for this Court to conclude that the orders were based on a procedural bar. *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004), *cert. denied sub nom Munson v. Metrish*, __ U.S. __, 125 S. Ct. 1937 (2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000).

Furthermore, Rule 6.508(D) was regularly followed as of 1990, long before Petitioner's conviction in 1998. *Simpson v. Jones*, 238 F.3d at 407 (citing *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000), and *Jones v. Toombs*, 125 F.3d 945, 947 (6th Cir. 1997)). Thus, Petitioner is presumed to have been apprised of Rule 6.508(D) by the time he appealed of right. Rule 6.508(D) was an independent basis for disposition of Petitioner's claims because, as the preceding paragraphs demonstrate, all three state courts actually relied on the rule to deny relief.[4] Thus, in order for Petitioner to prevail on his claims, he must show cause for his procedural

---

[4] *Cf. Abela v. Martin*, 380 F.3d 915, 922-24 (6th Cir. 2004) (holding that the petitioner's claims were not procedurally defaulted despite the Michigan Supreme Court's reference to Rule 6.508(D), because the supreme court did not clearly invoke a procedural bar and the lower state courts ruled on the merits of the issues).

default and prejudice or that failure to review his claims will result in a miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. at 750.

**B. "Cause"**

Petitioner alleges in claim XII that his appellate attorney was "cause" for his failure to raise all but his first five claims on direct appeal. Attorney error constitutes cause to excuse a procedural default only if counsel's performance was constitutionally deficient. *Deitz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004). To establish constitutionally ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687.

> [I]t is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 285, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id*. at 289.

*Caver v. Straub*, 349 F.3d at 348. "Counsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (citing *Greer v. Michell*, 264 F.3d 663 (6th Cir. 2001)). With these principles in mind, the Court will proceed to review Petitioner's substantive claims to determine whether appellate counsel's failure to raise the claims on direct appeal amounted to ineffective assistance.

**1. Trial Counsel**

The seventh habeas claim alleges ineffective assistance of trial counsel.

**a. Handcuffs**

Petitioner alleges that his trial attorney was ineffective for failing to object to Petitioner

26

being handcuffed in the jury's presence. Petitioner alleges that it was unnecessary to handcuff him, because he turned himself into the police and appeared in court over twenty times without incident.

"[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, __ U. S. __, __, 125 S. Ct. 2007, 2012 (2005); *accord Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986); *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970). Physical restraints can (1) undermine the presumption of innocence and the related fairness of the factfinding process, (2) interfere with the accused's right to counsel, and (3) frustrate a court's attempt to maintain dignified judicial proceedings. *Deck*, 125 S. Ct. at 2013.

Although the negative effects of restraints often will not be shown from a trial transcript, *id*. at 2015, there is no indication in the transcript of trial that Petitioner was handcuffed and that the jury was aware of Petitioner's handcuffs. Even assuming that he was handcuffed, this is not case in which the evidence against Petitioner was purely circumstantial, *cf. Ruimveld v. Birkett*, 404 F.3d 1006, 1017 (6th Cir. 2005), and Petitioner has not alleged that the handcuffs interfered with his ability to communicate with his attorney. Thus, it cannot be said that trial counsel's failure to object to Petitioner's handcuffs amounted to deficient performance and prejudiced the defense.

### b. Inadmissible Portions of Tape

Petitioner alleges next that his attorney should have moved for a mistrial after two inadmissable portions of Petitioner's taped interview with the police were played for the jury.

27

The inadmissible portions of the tape were references to the fact that (1) Petitioner was on probation for drunk driving and (2) the police suspected him of committing an armed robbery.

The parties agreed to omit these portions of the tape, but the irrelevant portions were played inadvertently for the jury. The trial court, however, promptly instructed the jurors to disregard information about Petitioner being on probation and not to consider the information when deciding the facts in this case. The trial court also instructed the jurors to disregard the taped conversation about an armed robbery. The jurors were informed of the attorneys' stipulation that Petitioner had never been convicted of armed robbery or any other felony. (Tr. Dec. 15, 1998, at 240-48.) In light of the trial court's cautionary instructions to the jury, defense counsel's failure to move for a mistrial did not prejudice Petitioner.

### c. Favorable Evidence

Petitioner contends that his attorney should have played a tape recording of Petitioner's second interview with the police for the jury. Petitioner states that he was sober during the second interview and that the interview would have raised a reasonable doubt as to whether he or the victim's husband was the killer. Petitioner further alleges that the second interview would have proved that he had been too intoxicated to be guilty of first-degree murder.

Petitioner inculpated himself in the first interview, and he has not alleged the substance of the exculpatory evidence from the second interview. Furthermore, the jury heard evidence about Petitioner's intoxication and rejected the defense. Therefore, defense counsel's failure to play the second taped interview to the jury did not prejudice Petitioner.

### d. Allegedly Biased Juror

Petitioner's fourth allegation about trial counsel is that he failed to use a peremptory

28

challenge to dismiss a biased juror.  The juror's grandfather had been stabbed to death over

twenty years earlier, and no one was ever charged with the crime.  The juror at first stated that

she did not think there was anything about her grandfather's murder that would prevent her from

being fair and impartial.  When the court questioned the juror further, she assured the trial court

that she could be fair and impartial and decide the case without sympathy or prejudice.  The juror

did not respond when defense counsel subsequently asked whether any juror could not presume

that Petitioner was innocent.  Petitioner himself said that he was satisfied with the composition

of the jury.  (Tr. Dec. 14, 1998, at 52.)  Therefore, defense counsel's failure to dismiss the juror

did not amount to deficient performance and did not prejudice Petitioner.

### e.  Juror Misconduct

Petitioner contends that his attorney should have objected to the trial court's mishandling

of a juror's misconduct.  The juror, Ronald Trombley, was discovered talking on the telephone

about the trial.  A bailiff brought the matter to the trial court's attention in the absence of the

jury. Defense counsel asked the trial court to excuse the juror immediately.  Defense counsel

later agreed with the prosecutor to make it appear that the juror was eliminated by random draw

at the conclusion of the proofs.  The trial court then called the jurors into the courtroom and

instructed them not to talk to anyone about the case before its completion and to notify the court

immediately if anyone tried to discuss the case with them.  (Tr. Dec. 15, 1998, at 318-23.)  Mr.

Trombley was excused on the final day of trial before the jury deliberated Petitioner's case.  (Tr.

Dec. 17, 1998, at 501.)

Although Petitioner contends that Mr. Trombley may have discussed the case with the

other jurors and influenced them before he was eliminated, the record does not reflect any

complaints by the jurors that someone tried to discuss the case with them.  Petitioner has failed

to show that Trombley influenced the other jurors and that his attorney's handling of the

situation prejudiced the defense.

### f.  Hearsay

Petitioner's final claim about his trial attorney is that the attorney failed to object to

hearsay testimony concerning the victim's husband, David Beal.  The hearsay was elicited from

Richard Garcia and Kimberlee McKay Rockwell, who testified that, according to the victim, her

husband had gone to Florida.  (Tr. Dec. 15, 1998, at 206 (Richard Garcia's testimony); Tr. Dec.

16, 1998, at 392 (Kimberlee McKay Rockwell's testimony).)  Petitioner asserts that this

testimony was inadmissible because David Beal was available and did testify and because the

prosecutor used the testimony to bolster Mr. Beal's testimony that he was staying in Florida

when the murder occurred.

The Michigan Rules of Evidence provide an exception to the hearsay rule when the

declarant is unavailable.  The declarant was Mimi Beal, who was unavailable to testify due to her

death.  Therefore, the hearsay was admissible under Michigan Rule of Evidence 804(a)(4), and

defense counsel was not ineffective for failing to object to the hearsay.

### g.  Summary of Claims about Trial Counsel

The Court concludes for the reasons given above that trial counsel's performance was not

deficient and, even if it was deficient, the deficiency did not prejudice the defense.  Therefore,

appellate counsel was not ineffective for failing to raise Petitioner's claims about trial counsel in

the appeal of right.

### 2.  The Prosecutor's Conduct

The eighth habeas claim alleges that the prosecutor's misconduct deprived Petitioner of his constitutional rights to a fair trial and due process of law.  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  "Therefore, even if the prosecutor's conduct was undesirable or even universally condemned, it does not constitute a due process violation unless the conduct was so egregious so as to render the entire trial fundamentally unfair."  *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (quotation marks and citations omitted).

### a.  Failure to Produce Evidence

Petitioner alleges that the prosecutor failed to produce evidence which he mentioned in his opening statement.  Although prosecutors may not make improper suggestions, insinuations, or assertions, *Berger v. United States*, 295 U.S. 78, 88 (1935), the following paragraphs demonstrate that the prosecutor's conduct was not improper.

### I.  Charles Morris

The prosecutor informed the jurors in his opening statement that Charles Morris would testify that Petitioner admitted stabbing Mimi Beal.  (Tr. Dec. 14, 1998, at 76.)  Although Morris never testified, the reason for his failure to do so was that he thought he might incriminate himself.  The trial court admonished the prosecutor not to call Morris knowing that Morris would refuse to testify, (Tr. Dec. 15, 1998, at 301-16, 327-49), and, at the conclusion of the case, the trial court instructed the jury that the non-production of Morris favored neither the prosecution

nor the defense and was not the fault of either party.  (Tr. Dec. 17, 1998, at 493.)  Because

Morris's refusal to testimony could not have been anticipated before trial, the prosecutor was not

at fault for informing the jury in his opening statement that Morris would testify.

### ii.  Kimberlee McKay Rockwell

The prosecutor also informed the jurors in his opening statement that Kimberlee McKay

Rockwell would testify that Petitioner confessed to stabbing Mimi Beal.  (Tr. Dec. 14, 1998, at

73.)  Petitioner correctly points out that Kimberlee testified on cross-examination that Petitioner

never confessed to killing Mimi Beal.  (Tr. Dec. 16, 1998, at 396.)  On direct examination,

however, Mimi testified that Petitioner told her over the telephone on the day of the murder that

he thought he had stabbed Mimi, and he wondered whether she was dead or alive.  (*Id.* at 386-

88.)  Thus, the prosecutor did not fail to produce evidence concerning Petitioner's admission to

Kimberlee McKay Rockwell.

### b.  Vouching

Petitioner alleges that the prosecutor vouched for Kimberlee McKay Rockwell's

credibility.  The Sixth Circuit has explained that

> [i]mproper vouching occurs when a prosecutor supports the credibility of a
> witness by indicating a personal belief in the witness's credibility thereby placing
> the prestige of the office of the United States Attorney behind that witness.  *See,
> e.g., Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993); *United States v.
> Martinez*, 981 F.2d 867, 871 (6th Cir. 1992).  Generally, improper vouching
> involves either blunt comments, *see, e.g., United States v. Kerr*, 981 F.2d 1050,
> 1053 (9th Cir. 1992) (stating that improper vouching occurred when prosecutor
> asserted own belief in witness's credibility through comments including "I think
> he [the witness] was candid.  I think he is honest."), or comments that imply that
> the prosecutor has special knowledge of facts not in front of the jury or of the
> credibility and truthfulness of witnesses and their testimony, *see, e.g., [United
> States v.] Carroll*, 26 F.3d [1380, 1388 (6th Cir. 1994)] (stating that improper
> vouching occurred when prosecutor argued that the witness testifying under a
> plea agreement was in jeopardy if the court or government did not find the

32

testimony truthful).

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

The prosecutor suggested to the jury during closing arguments that Kimberlee McKay Rockwell's testimony "rang true" because it obviously was difficult for her to explain to the jurors what Petitioner did to Mimi Beal and it tore her apart to know how he killed her. (Tr. Dec. 17, 1998, at 455.) The comments were not improper, because the prosecutor did not directly assert his own belief in Kimberlee's credibility, nor imply that he had special knowledge of facts about her credibility or truthfulness.

### c. Trickery

Petitioner's final claim about the prosecutor is that he presented inadmissible evidence through trickery. The inadmissible evidence was the portion of Petitioner's tape-recorded statement to the police in which an armed robbery and Petitioner's probationary status were mentioned. The prosecutor promised to delete references to these matters before playing the tape-recorded statement for the jury, but the jury nevertheless heard the contested portions.

It is clear from the record that the disputed portions of the tape were admitted inadvertently. The prosecutor apologized for the error, and the trial court cautioned the jury to disregard references to a felony and to Petitioner's probationary status. (Tr. Dec. 15, 1998, at 240-48.) Thus, the error did not violate Petitioner's right to due process.

### d. Summary of Prosecutorial-Misconduct Claims

The Court concludes from its review of the record that the prosecutor's conduct was not improper and did not render Petitioner's trial fundamentally unfair. Therefore, appellate counsel was not ineffective for failing to raise Petitioner's prosecutorial-misconduct claims on direct

review.

### 3.  The jury Instruction on Possible Verdicts

The ninth habeas claim alleges that Petitioner was deprived of a fair trial and due process of law when the trial court failed to instruct the jurors that "not guilty" was a possible verdict. The trial court did explain that, if the prosecutor did not prove each element of first-degree murder beyond a reasonable doubt, the jury should find Petitioner not guilty.  (Tr. Dec. 17, 1998, at 487.)  The court also explained that, if the prosecutor did not prove intent to commit murder, the jurors could find Petitioner not guilty of first-degree murder.  (*Id*. at 495-96.)  And when defense counsel objected to the court's failure to explain that "not guilty" was an option, the court noted that "not guilty" appeared on the verdict form and that, if the jurors could not agree on whether the prosecutor had proven every element of one of the crimes, they should check "not guilty" on the form.  (*Id*. at 501-02.)

The jurors clearly were made aware of the possibility of finding Petitioner not guilty. Consequently, appellate counsel was not ineffective for failing to raise Petitioner's claim about the possible verdicts.

### 4.  Cumulative Effect of Errors

The tenth habeas claim alleges that the cumulative effect of the errors at trial deprived Petitioner of his constitutional rights to a fair trial and due process of law.  Even if this claim were not procedurally defaulted, the Court would have to conclude that it lacked merit, because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant

habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.), *opinion corrected on denial of reh'g*, 307 F.3d 459 (2002), *and cert denied*, 538 U.S. 947 (2003). Therefore, it cannot be said that the state court's judgment was contrary to any Supreme Court decision so as to warrant habeas relief under 28 U.S.C. § 2254(d). *Id.*

### 5. Actual Innocence

The eleventh habeas claim alleges that Petitioner is actually innocent of the crime for which he was convicted. Petitioner alleges that there is no evidence that he committed the charged crime and that there was considerable evidence demonstrating that he did not commit the crime. He further alleges that, even if the court finds he is not innocent, there is evidence that he could not have committed a premeditated murder.

Appellate counsel raised three challenges to the sufficiency and weight of the evidence on direct appeal. He was not ineffective for failing to raise an additional claim of actual innocence. Even if this claim were not procedurally defaulted, claims of actual innocence are not an independent basis for habeas corpus relief. *Herrera*, 506 U.S. at 400.

### C. Summary of Petitioner's Procedurally Defaulted Claims VII through XI

Petitioner's claims about his trial attorney, the prosecutor's conduct, the jury instructions on possible verdicts, the cumulative effect of the errors, and actual innocence are not clearly stronger than the claims appellate counsel raised on appeal. Therefore, appellate counsel was not constitutionally ineffective, and Petitioner has not shown "cause" for his procedural default of failing to raise all his claims on direct appeal.

The Court need not determine whether Petitioner was prejudiced by the alleged violations of federal law, because he has not shown "cause." *Smith v. Murray*, 477 U.S. 527, 533 (1986);

35

*Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003).  Although Petitioner may overcome his procedural default upon a showing of actual innocence, *Lott v. Coyle*, 261 F.3d at 620, he has not submitted any new and credible evidence of actual innocence.  Therefore, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate the merits of claims VII through XI.  **V.  Claim VI - Substantive Claims about Appellate Counsel**

Habeas claim VI raises additional independent claims about appellate attorney that Petitioner could not have raised on direct appeal.  The Court will proceed to discuss these claims, keeping in mind that an appellate attorney need not raise every nonfrivolous argument on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  "[T]he effectiveness of appellate counsel can be measured by the well-established *Strickland* standard and, in this Circuit, with the assistance of the eleven questions set forth in *Mapes* [*v. Coyle*, 171 F.3d 408 (6th Cir. 1999)]."  *Whiting v. Burt*, 395 F.3d 602, 619 (6th Cir. 2005).  The eleven questions are:

(1)  Were the omitted issues 'significant and obvious'?
(2)  Was there arguably contrary authority on the omitted issues?
(3)  Were the omitted issues clearly stronger than those presented?
(4)  Were the omitted issues objected to at trial?
(5)  Were the trial court's rulings subject to deference on appeal?
(6)  Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
(7)  What was appellate counsel's level of experience and expertise?
(8)  Did the petitioner and appellate counsel meet and go over possible issues?
(9)  Is there evidence that counsel reviewed all the facts?
(10) Were the omitted issues dealt with in other assignments of error?
(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d at 427-28.

**A.  Failure to Call Witnesses**

36

Petitioner alleges that his appellate attorney failed to call witnesses who could have verified that Petitioner was handcuffed in the jury's presence.  Petitioner brought this issue to the attention of his appellate attorney.  Although the attorney argued in a motion for new trial that the jury saw Petitioner in shackles during a recess in the trial, *see* Petition for Writ of Habeas Corpus, Exh. K and Exh. M, at 3, the attorney did not raise the matter during a hearing on the motion, and he did not present the issue on direct appeal.

Even if appellate counsel could have established that the jury saw Petitioner in handcuffs, the evidence against Petitioner was considerable, and the handcuffs had no apparent impact on Petitioner's ability to participate in his own defense or to communicate with his attorney.  Nor is there any indication in the record that the use of handcuffs undermined the dignity of the proceedings.  Therefore, the prosecutor likely could have demonstrated beyond a reasonable doubt that any error in physically restraining Petitioner in the jury's presence did not contribute to the jury's verdict.  *See Deck*, 2005 WL 1200394, at *9 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).  The Court concludes that appellate counsel's failure to call witnesses to establish that the jury saw Petitioner in handcuffs did not amount to deficient performance and did not prejudice the appeal.

### B.  Failure to Cite Authority

Petitioner alleges that his appellate attorney failed to cite any cases to support the contention that trial counsel was ineffective for not moving to suppress Petitioner's statements to the police.  Petitioner contends that the Michigan Court of Appeals rejected his claim on direct appeal because of appellate counsel's failure to cite a single case.

The court of appeals did state that Petitioner had cited "no authority supporting a

37

conclusion that suppression was warranted." *Little*, Mich. Ct. App. No. 217298, at 5.  The court

of appeals went on to say that, even if Petitioner was intoxicated, that fact alone was not

dispositive of the issue of voluntariness.  Because Petitioner's intoxication was not dispositive of

his voluntariness claim, *Newman*, 889 F.2d at 94, he has failed to demonstrate that counsel's

omission prejudiced him.

### C.  Ignoring Significant and Obvious Issues

Petitioner's final claim about appellate counsel is that the attorney ignored significant

and obvious issues while pursuing weaker claims.  Petitioner alleges that he informed his

attorney of his claims concerning trial counsel, the prosecutor's conduct, the jury instructions,

the cumulative effective of errors, and actual innocence, but counsel failed to present any of

these claims on direct appeal.

Although appellate counsel's sentencing claim may have been weak, counsel's challenge

to the sufficiency of the evidence was a substantial issue.  It prompted the court of appeals to

state that this case presented a close question.

Furthermore, Petitioner's habeas claims lack merit.  There is not a reasonable probability

that the inclusion of Petitioner's habeas claims on direct appeal would have changed the result of

the appeal.  Therefore, appellate counsel's performance was not deficient and any deficiencies

did not prejudice the appeal.  Petitioner is not entitled to the writ of habeas corpus on the basis of

his sixth claim.

## VI. Conclusion

Claims IV, VII, VIII, IX, X, and XI are procedurally defaulted, and claims I, III, V, and

VI do not warrant granting the writ of habeas corpus.  Claim II was withdrawn, and claim XII is

not a substantive claim.  Petitioner's application for the writ of habeas corpus [Doc. # 1] is

DENIED.



s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  June 17, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on
June 17, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager